SD:LHE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

OSVALDO MARIA VASQUEZ,

Defendant.

- - - - - - - - - - - - - - X

16 M 0256

COMPLAINT AND AFFIDAVIT IN SUPPORT OF ARREST WARRANT

(21 U.S.C. § 846)

FILED UNDER SEAL

EASTERN DISTRICT OF NEW YORK, SS:

PATRICK HANNA, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

On or about and between August 2014 and April 2015, within the Eastern District of New York and elsewhere, the defendant OSVALDO MARIA VASQUEZ did knowingly and intentionally conspire to distribute and possess with intent to distribute a substance containing cocaine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841.

(Title 21, United States Code, Sections 841, 846).

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been involved in the investigation of numerous cases involving narcotics conspiracies. I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file, and reports of other law enforcement officers involved in the investigation.

2. Since June 2014, Special Agents with the FBI and the Drug Enforcement Administration ("DEA") have been investigating narcotics offenses committed in the Eastern District of New York and elsewhere by OSVALDO MARIA VASQUEZ and others.

3. On or about August 19, 2014, the defendant, OSVALDO MARIA VASQUEZ brokered a one kilogram cocaine transaction on behalf of a confidential government source ("CS").[2] In the weeks prior to the transaction, VASQUEZ and the CS engaged in a number of conversations, both over the telephone and in person, which were consensually recorded by the CS. During these conversations, VASQUEZ and the CS negotiated terms of a kilogram purchase of cocaine. The parties agreed on a price of $38,000 for the kilogram.

4. On August 19, 2014, VASQUEZ and the CS met again inside the FBI supplied vehicle, which was again equipped with audio and video recording equipment. I have

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

[2] The CS was arrested by the DEA in 2008 and pleaded guilty to narcotics charges in the United States District Court for the Southern District of New York. The CS receives an ongoing benefit in the form of relief from deportation for his continuing cooperation with the DEA and FBI. Information provided by the CS in the past has proven to be reliable and has been corroborated by drug seizures and information obtained by other witnesses.

reviewed these recordings. Prior to the meeting, the FBI had arranged with the CS for a third party ("Individual #1") to bring the money to the vehicle once the CS communicated that he had received the cocaine. Agents supplied Individual #1 with $38,000 of pre-recorded buy money. VASQUEZ and the CS met at a parking lot in the vicinity of 112th Street in Queens. Shortly after VASQUEZ entered the vehicle, another individual arrived ("Co-Conspirator #1"). Co-Conspirator # 1 carried a cardboard box with him into the vehicle, which he set before the CS in the car. Inside the box was a clear plastic bag, and within the bag was a one kilogram of cocaine. The CS inspected the cocaine, and then placed it atop the cup holders in the car while he called Individual #1. A few minutes after the phone call, Individual #1 arrived to the vehicle with the money, which he supplied to Co-Conspirator #1, who handed the money to VASQUEZ. VASQUEZ then counted the money, and when he was done, handed it back to Co-Conspirator #1. Co-Conspirator #1 then exited the vehicle, and the meeting was concluded.

     5. After the conclusion of the meeting, the CS met with the FBI at a pre-determined location, and supplied the FBI with the cocaine. The cocaine field-tested positive for the presence of cocaine, which had a total gross weight of approximately 1 kilogram.

     6. On November 12, 2014, the Honorable Jesse M. Furman of the Southern District of New York signed an Order authorizing the interception of wire communications sent to and from a telephone subscribed to Co-Conspirator #1. This Order was renewed on December 15, 2014 and January 18, 2015.[3] During the period of the wiretap, multiple calls

---

[3] Any summaries of communications intercepted pursuant to these Orders set forth herein refer to draft translations of communications in Spanish to English and are set forth in sum and substance and in part.

were intercepted during which the defendant, OSVALDO MARIA VASQUEZ, attempted to coordinate narcotics transactions through Co-Conspirator #1.

7. For example, on January 8, 2015, at approximately 9:03 a.m., VASQUEZ called Co-Conspirator #1. During this call, VASQUEZ explained that "these people" have been calling him since the day before, and that they want to talk about "three blondes." VASQUEZ explained that he "decided to talk to [Co-Conspirator #1] first to see what I'm going to tell them whenever I speak to them." Co-Conspirator #1 replied "you only have to call me." VASQUEZ asked if "they" are around and Co-Conspirator #1 said yes and that he would call around to make sure. Based upon my training and experience with the investigation to date, I believe that this call related to a cocaine transaction. I believe this in part because VASQUEZ used code words relating to women (e.g. "blondes") during other intercepted telephone calls that seem to relate to cocaine transactions. I believe that when Co-Conspirator #1 advised VASQUEZ that VASQUEZ only had to call Co-Conspirator #1, he was assuring VASQUEZ that he could supply cocaine, in this case, three kilograms, upon receiving a phone call.

8. Additionally, on January 10, 2015, at approximately 2:24 p.m., VASQUEZ called Co-Conspirator #1 again. During the conversation, VASQUEZ advised that "the people" are guaranteeing "four women for Monday's party." Co-Conspirator #1 replied that he told his "friend" to bring him two women tomorrow night. Co-Conspirator #1 explained he prefers to do two in the morning and the other two at night. VASQUEZ explained that he would tell "the guy" to do two in the morning. Co-Conspirator #1 replied that he would take them to work with him on Monday, and if the guy guarantees the first two he will go get the other two. Based upon my training and experience and other intercepted

communications, I believe this call related to a cocaine transaction. Specifically, I believe that when VASQUEZ informed Co-Conspirator #1 that "the people" are guaranteeing "four women for Monday's party," he was informing him that his clients were guaranteeing the purchase of four kilograms on Monday. I believe this in part because VASQUEZ has used the code word "women" in other communications to refer to kilograms of cocaine. I believe that when Co-Conspirator #1 replied that he would prefer to do two "women" in the morning and two in the afternoon, he was suggesting dividing the delivery to provide two kilograms in the morning and two later in the day.

WHEREFORE, your deponent respectfully requests that the defendant OSVALDO MARIA VASQUEZ be dealt with according to law.

PATRICK HANNA
Special Agent
Federal Bureau of Investigation

Sworn to before me this
18th day of March, 2016

S/ M. Go

THE HONORABLE MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK