U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SD:LHE
F. #2014R01671

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 30, 2016

By ECF

Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Osvaldo Maria Vasquez
                  Miscellaneous Docket No. 16 - 256 (MDG)

Dear Judge Pollak:

        The government respectfully submits this letter in anticipation of the initial appearance and bail determination for the defendant OSVALDO MARIA VASQUEZ, who is scheduled to be arraigned on March 30, 2016 in the above-captioned matter. The defendant was arrested yesterday, March 29, 2016, on charges relating to his participation in a cocaine distribution conspiracy in violation of 21 U.S.C. § 846.

        The government requests that the Court require a meaningful bond and the signature of multiple responsible sureties in order to guarantee defendant OSVALDO MARIA VASQUEZ's future appearance in court.

I.    FACTUAL STATEMENT

        The government proffers the following facts in support of its application.[1]

        Since 2014, the Federal Bureau of Investigation ("FBI") and Drug Enforcement Administration ("DEA") have been investigating narcotics offenses committed in Queens and elsewhere by the defendant, OSVALD MARIA VASQUEZ. As detailed in

---

[1] See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings); United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995) (same).

the complaint, VASQUEZ is accused of participating in kilogram-quantity cocaine transactions in 2014 and 2015.

Last night, on March 29, 2016, agents arrested the defendant as he was exiting Excellent Tire Shop Services, located at 98-04 Springfield Boulevard, Queens Village, New York. Excellent Tire Shop Services is a street-level business occupying a portion of a retail building. The defendant had previously been observed exiting the tire shop on multiple occasions, and last night was observed exiting the tire shop in possession of a number of large bags. Following his arrest, the defendant consented to the search of his vehicle, where agents located the large bags, inside of which were hundreds of packages of suspected synthetic cannabinoids packaged and labeled for sale. Commonly sold on the street as "K2" or "Spice," synthetic cannabinoids are Schedule I controlled substances.

Agents had previously obtained a search warrant for the tire shop, authorized by Magistrate Judge Go on March 18, 2016, and following the defendant's arrest made entry into the premises. Upon entry, the agents discovered approximately 170 kilograms of suspected synthetic cannabinoids packaged for immediate sale to customers. As they surveilled the premises, they observed a tarp, behind which they found a manufacturing facility for synthetic cannabinoids. Among other things, they found industrial quantities of various chemicals used to manufacture synthetic cannabinoids, scales, packaging materials, flavor agents, and a large quantity of processed cannabinoids that were not yet packaged for sale. This included a quantity of cannabinoids spread across the floor in order to dry prior to packaging for distribution. In total, law enforcement seized at least 200 kilograms of suspected synthetic narcotics from the premises, which is estimated to have a street value of at least $200,000.

II. ARGUMENT

    A. The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Rodriguez, 950 F.2d 85, 88 (2d Cir. 1991); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. See Chimurenga, 760 F.2d at 405.

The Bail Reform Act lists the following four factors as relevant to the determination of whether detention is appropriate:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Title 18, United States Code, Section 3142(g).

    B.    <u>Factors Relevant to Bail</u>

        1.  <u>Nature and Circumstances of the Offense</u>

The first factor identified by the Bail Reform Act – the nature and circumstances of the offense – favors requiring a substantial bail package and multiple responsible sureties before the defendant can be released.

The defendant is currently charged with participating in and negotiating multiple multi-kilogram cocaine transactions in 2014 and 2015. As set forth above, in connection with his arrest, law enforcement also obtained evidence indicating that the defendant was involved in operating a factory used to create and package large quantities synthetic cannabinoids. Thus, the defendant faces substantial penalties if convicted. The possibility of a severe sentence is an important factor in assessing a defendant's incentives to flee. See <u>United States v. Cisneros</u>, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond to Mexico); <u>United States v. Townsend</u>, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight"); <u>United States v. Jackson</u>, 823 F.2d 4, 7 (2d Cir. 1987); <u>United States v. Martir</u>, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms of 105 years' imprisonment created potent incentives to flee); <u>United States v. Dodge</u>, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a severe sentence heightens the risk of flight).

### 2. Weight of the Evidence

The second factor identified by the Bail Reform Act is the weight of the evidence. Where the evidence of guilt is strong, it provides "a considerable additional incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

The evidence against the defendant in this case is overwhelming. The defendant participated in a controlled cocaine transaction in August 2014 and was subsequently intercepted over a wiretap negotiating additional cocaine deals. Moreover, last night he was caught in possession of significant quantities of synthetic cannabinoids, while leaving a factory used to manufacture those drugs.

Given the strength of the evidence against him and the sizeable penalties he faces upon conviction, he has a powerful incentive to flee. Accordingly, the government requests that the court require a significant bond package prior to the defendant's release.

### 3. History and Characteristics of the Defendants

The defendant has no known criminal history and is believed to hold lawful permanent resident status in the United States. Setting aside his history of involvement with the narcotics crimes detailed herein, his history and characteristics suggest that he is a candidate to be released on bond upon presentation of a sufficient package.

### III. CONCLUSION

For all these reasons, the government respectfully requests that the Court require a meaningful bond and the signature of multiple responsible sureties in order to guarantee defendant OSVALDO MARIA VASQUEZ's future appearance in court.

Respectfully submitted,

ROBERT L. CAPERS
United States Attorney

By: /s/ Lauren Howard Elbert
Lauren Howard Elbert
Jennifer S. Carapiet
Assistant U.S. Attorneys
(718) 254-7577/6402